OPINION
This is an appeal from a judgment of the Juvenile Division of the Butler County Court of Common Pleas granting permanent custody of Joshua, Michileigh, and Connor Robinson to the Butler County Children Services Board ("BCCSB").
On April 4, 1996, the BCCSB filed complaints alleging that Michileigh, born November 3, 1988, Joshua, born February 26, 1991, and Connor, born March 7, 1995, were neglected and dependent children. R.C. 2151.27.
On April 10, 1996, a shelter care hearing was conducted, and the children were placed in the temporary custody of BCCSB.
After a number of hearings and continuances, a pretrial hearing was held on June 24, 1996, at which time the father of Michileigh and Joshua Robinson executed a surrender of his parental rights. At the hearing, a blood test was also ordered for Connor's alleged father, and the cause was set for a permanent custody hearing on August 1, 1996.
Thereafter, adjudication hearings were conducted on August 12, 1996, October 29, 1996, November 7, 1996 and November 21, 1996, after which the trial court found the three children to be neglected and dependent. Specifically, the court found that the parents could not be expected to provide adequate parental care for the children within a reasonable period of time; that BCCSB made reasonable efforts to prevent the need for the children to live outside of a parent's home; that the children cannot be placed with any parent within a reasonable period of time; that no relative can provide an adequate home for the children; and that granting permanent custody to BCCSB was in the best interest of the children. Accordingly, the trial court proceeded to terminate the parental rights of the mother, Elizabeth Robinson, the parental rights of the father of Michileigh and Joshua, the parental rights of the alleged father of Connor, and the parental rights of any other unknown fathers, if any, of the neglected and dependent children.
Subsequently, the mother of the children, Elizabeth Robinson, filed a timely notice of appeal, and the cause is presently before this court for further review. In this court, the guardian ad litem for the children, Fred Miller, has recommended that this court affirm the decision of the juvenile court, but Ms. Robinson argues, for her only assignment of error, that the order granting permanent custody to BCCSB is against the manifest weight of the evidence.
In this regard, and since the permanent deprivation of parental rights is such an extreme measure, the General Assembly has provided exacting guidelines for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with such parents. R.C.2151.414. See In re William S. (1996), 75 Ohio St.3d 95. Furthermore, an order permanently removing children from the custody of their parents must be supported by clear and convincing evidence. R.C. 2151.414. See In re Weaver (1992),79 Ohio App.3d 59.
In the present case, the record reflects a conscious regard for the requirements of R.C. 2151.414, and the evidence, which was presented over a period of time, dwells upon parental faults and habits which militate against the relief sought by the appellant herein. At the hearings, the BCCSB submitted substantial evidence of the neglect, dependency and possible abuse of Michileigh and Joshua Robinson, and more recently, Connor Robinson was likewise shown to have been the subject of neglect, dependency and possible abuse. In other words, the evidence overwhelmingly shows that the parents have failed to provide a stable and secure environment for their children.
Among the various witnesses called by appellee was Dr. William Walters who had evaluated the traits of appellant, Elizabeth Robinson, both in December 1993 and October 1996. Dr. Walters observed no change in Robinson's psychological functioning during the intervening period, and he noted after his second evaluation that she was still in need of long term psychotherapy. Walters further opined that Ms. Robinson would not be capable of parenting her children within a reasonable period of time. Another expert witness, Dr. Charles Lee, also stated that Robinson had a personality disorder that needed "quite a bit of work." Lee further noted that without treatment people with her type of disorder usually do not stop acting out until they reach their mid-forties.
In this case, almost all of the evidence, which includes numerous exhibits, lends support to the permanent order of the juvenile court, and understandably, the only substantial evidence submitted in opposition to the order originated with appellant, Ms. Robinson, who testified that she was willing and able to care for her children. However, the testimony of Robinson, however commendable, was described by one of the experts as follows, "she expresses an interest in caring for her children. My concern is her ability to translate that on a day-to-day basis into what's necessary for the children. Wanting to and being able to carry that out are several issues."
At the hearing of the matter, Ms. Robinson testified that she would "do anything it takes to get all three of my children back," including seeing a therapist for treatment of her problems, but immediately thereafter, she freely admitted that she had been incarcerated four or five times during the last five years for disorderly conduct and passing bad checks. And as a whole, the evidence shows a lack of commitment to carry out the treatment prescribed to remedy the conditions causing the children to be placed outside the home of the natural parents.
The standard of "clear and convincing evidence" is defined as that measure or degree of proof "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." State v. Schiebel (1990), 55 Ohio St.3d 71. See, also, In re Weaver (1992), 79 Ohio App.3d 59. Here, the evidence provided the trial court with no viable alternative to the permanent placement, and manifestly, the state of the evidence, as a whole, is such as to preclude any interference from a reviewing court. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77; C. E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
Accordingly, the assignment of error is overruled, and the judgment will be affirmed.
YOUNG, P.J., and POWELL, J., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.